United States District Court
District of Massachusetts

*FILED IN CLERK'S OFFICE*
*2015 MAR 27 PM 8: 03*
*U.S. DISTRICT COURT*
*DISTRICT OF MASS.*

Philip G. Haddad, Jr.

Plaintiff / Pro Se

V.

Civil Action No. _____

Charles D. Baker, Jr., Governor Commonwealth of Massachusetts

Timothy P. Alben, Superintendent, Mass State Police

James Jones, Major, Mass State Police

Sean Newman, Trooper, Mass State Police

Mark R. Kmetz, Director, Mass Div. of Professional Licensure

Christopher N. Carroll, Chief Investigator, Mass Div. of Prof. Licensure

Peter C. Nordblom, President, Nordblom Company

Santiago Galaz, President, Securitas USA

Thomas R. Fagan, N.E. Reg. V.P., Securitas USA

Martine Florestal, Security Liaison, Securitas Security Services, Inc.

Defendants

## COMPLAINT

1. The Plaintiff, **Philip G. Haddad, Jr.**, is a resident of Worcester (Worcester County) and a citizen of the United States

2. The Defendant, **Charles D. Baker, Jr.**, is a resident of Swampscott and a citizen of the United States

1

3. The Defendant, **Timothy P. Alben,** is a resident of East Longmeadow and a citizen of the United States

4. The Defendant, **James Jones,** is a resident of Massachusetts and a citizen of the United States

5. The Defendant, **Sean Newman,** is a resident of Massachusetts and a citizen of the United States

6. The Defendant, **Mark R. Kmetz,** is a resident of West Roxbury and a citizen of the United States

7. The Defendant, **Christopher N. Carroll**, is a resident of Quincy and a citizen of the United States

8. The Defendant, **Peter C. Nordblom,** is a resident of Massachusetts and a citizen of the United States

9. The Defendant, **Santiago Galaz,** is a resident of New Jersey and a citizen of the United States

10. The Defendant, **Thomas R. Fagan,** is a resident of Massachusetts, and a citizen of the United States

11. The Defendant, **Martine Florestal,** is a resident of Massachusetts and a citizen of the United States

## Jurisdiction

12. This court has jurisdiction over this matter pursuant to 28U.S.C. 1332

## Facts

13. On Thursday, April 12, 2012, after transporting an elderly couple to Logan Airport, Plaintiff visited (or at least attempted to visit) the offices of the Division of Insurance at 1000 Washington Street, Boston, MA. After presenting my driver's license, receiving a building pass badge, and being admitted into the Building at approximately 8:00 AM, I was directed to the dining facility on the 11th floor to patiently await the opening of the Offices at the Division of Insurance at 8:45 AM.

14. Shortly thereafter while in the dining facility having coffee and reviewing documents in my possession, I was approached by Ms. Martine Florestal, Security Liaison for Securitas Security Services (the same person who processed me through the screening process upon entering the building). Ms. Florestal stated that although I was there to visit the Division of Insurance (DOI) offices, there was a COMPLAINT issued and an ORDER filed against me barring my entry into the privately owned building at 1000 Washington Street in Boston by another Division of the Massachusetts State Government (the Division of Professional Licensure) in the person of Mr. Christopher Carroll, Chief Investigator, and that I must leave the building immediately.

15. Unaware of any Complaint or Order barring me from entering the privately owned building at 1000 Washington Street in Boston (and even to this very day never having received notification thereof), I stated to Ms. Florestal that I wished to speak with Mr. Carroll either on the phone or in person in order to rectify this obvious mistake. Ms. Florestal refused and indicated she would contact the Massachusetts State Police to evict me from the Building at 1000 Washington Street in Boston if I did not leave immediately. I informed Ms. Florestal, I would consummate my business as scheduled with the Division of Insurance at 8:45 AM and then leave the building.

16. Approximately 10 minutes later, I was approached by a Massachusetts State Trooper (Trooper Sean Newman) who identified himself and asked me to state my name and provide him with identification. Certainly wishing to be compliant with Trooper Newman's wishes, I stated my full name and proceeded to hand Trooper Newman my Massachusetts Driver's License.

17. Trooper Newman stated to me that there was a COMLAINT filed against me and an ORDER barring me from the Building, and that the Massachusetts State Police were notified that I (Haddad) was an unruly person, a threat to the welfare of State employees in the building, and that I must leave immediately or he (Trooper Newman) would arrest me. I stated, "I am unaware of any such Complaint or Order; I have never been notified of such an action: and that I wished to speak with Mr. Carroll then and now!" Trooper Newman insisted I had been so informed and had to be aware of the Complaint and Order barring me from the building. I reiterated once again that I had no knowledge of any Complaint or Order regardless of what Trooper Newman was stating to me as a fact. Trooper Newman stated a second time, "Mr. Haddad, either you leave with me as I escort you off the premises, or I will arrest you now!"

18. I certainly did not wish to be arrested and complied with Trooper Newman's demands; believing he (Trooper Newman) was aware of and had seen the Complaint and Order prior to taking the action he did to evict me from the privately owned building at 1000 Washington Street in Boston.

19. As Massachusetts State Trooper Newman and I were approaching the elevators on the 11th floor of the building and as the door of the elevator opened, seven (7) Boston Police Officers rushed off the elevator with their hands on their holstered weapons. Needless to say both Massachusetts Trooper Newman and I were surprised (and shocked) to say the least. The Boston Police Officer-in-Charge stated, "Is this Haddad?" Trooper Newman stated, "This is Mr. Haddad!" The Boston Police Officer-in-Charge stated "We (The Boston Police Department) received a 911 call stating "Haddad was in the building, was a threat to the lives of employees in the building, was known to carry a weapon, and could the Boston Police respond immediately?"

20. Trooper Newman responded to the Boston Police Officer-in-charge, and I quote, "I certainly would not have come alone if we were informed of the same accusations as you received!"

21. Before being escorted from the Building and from the premises surrounding the building at 1000 Washington Street, in Boston by Massachusetts State Trooper Newman and the Boston Police Officer-in-Charge, Massachusetts State Trooper Newman wrote out and handed me a piece of paper with the name, title and phone number for Christopher Carroll, Chief Investigator for the Massachusetts Division of Professional Licensure as the person who issued the Complaint and Order barring me from the building. At that time, I was also presented with a business card for Mr. Carroll's Deputy Chief Investigator, John Bresnahan, as Building Security could not find a business card for Mr. Carroll.

22. As I was being escorted from the Building and from the premises surrounding the building at 1000 Washington Street in Boston by Massachusetts State Trooper Newman and the Boston Police Officer-in-Charge, the Boston Police Officer-in-Charge asked if I would agree to being searched (which I most certainly agreed to). I was further asked if I had access to a firearm (the answer being "NO")! Finding no firearm or weapon of any kind on Plaintiff Haddad, the Boston Police Officer-in-Charge apologized for having searched me and for what I had just been subjected to. He (the Boston Police Officer-in-Charge) immediately turned to Trooper Newman, and said, ***"The Massachusetts State Police take the lead in this investigation!"***

23. Again and <u>for the Record</u> - my sole purpose in visiting the privately owned Office Building at 1000 Washington Street in Boston on Thursday, April 12, 2012 was to inquire as to the status of the content in correspondence previously forwarded to the Division of Insurance.

24. Between Thursday April 12, 2012 and Tuesday, April 24, 2012, Lt. James Jones (now Major James Jones) of the Massachusetts State Police and the person who dispatched State Trooper Sean Newman to 1000 Washington Street in Boston on the morning of April 12, 2012 told me he had three (3) telephone conversations with the alleged initiator of the Complaint and Order, Christopher Carroll barring Plaintiff Haddad from the building as referenced above. I asked Lt. Jones for copies of the conversations conducted during the investigation – to which he refused. I indicated to Lt. Jones that I would seek

4

the information under the Freedom of Information Act, if he chose to ignore my request. Lt. Jones immediate response was, "I am too busy to speak with you further", and he hung up the phone.

25. On Tuesday, April 24, 2012 at the bequest of the Massachusetts Funeral Board, Plaintiff Haddad was invited to meet with the Funeral Board at 1000 Washington Street in Boston – the same facility Plaintiff Haddad had been evicted from 12 days earlier. Upon entering the building, Plaintiff Haddad observed Massachusetts State Trooper Newman had once again been dispatched to the privately owned building at 1000 Washington Street in Boston. Plaintiff Haddad asked Massachusetts State Trooper Newman if his presence on this date (April 24, 2012) was at the request of Christopher Carroll, Chief Investigator for the Massachusetts Division of Professional Licensure. Trooper Newman stated "Yes, and I am here to assure the safety of personnel in the privately owned building at 1000 Washington Street in Boston and to maintain the peace in the event of an altercation during your scheduled visit with the Massachusetts Funeral Board. Additionally, I will be meeting with Mr. Carroll."

26. At this point, I invited Trooper Newman to accompany me into the meeting, to remain in the meeting during my time there, and to witness my departure from the building at the conclusion of the meeting! Trooper Newman refused!

27. In order that I (Plaintiff Haddad) might have an understanding of what lead up to the incident on the morning of April 12, 2012 at the privately owned Office Building at 1000 Washington Street in Boston wherein Massachusetts State Trooper, Sean Newman was dispatched to the scene; Plaintiff has requested (and subsequently demanded) a copy of the recorded Official Complaint and Order to restrict his visitation rights to the privately owned Office Building at 1000 Washington Street in Boston, wherein the aforementioned incident occurred on April 12, 2012; documentation as to who authorized the Order to restrict his access to the privately owned Office Building at 1000 Washington Street in Boston; and who issued the Order to deny his access to the privately owned Office Building at 1000 Washington Street in Boston, wherein Massachusetts State Trooper Newman was dispatched on two (2) separate occasions to the aforementioned facility (April 12, 2012 and again on April 24, 2012) to *all* Defendants in this matter.

28. Plaintiff Haddad has not now nor has he ever been a threat to anyone. He has never threatened anyone or expressed an interest in harming anyone. He is not and has never been a violent person.

29. Plaintiff Haddad has patiently and with detailed precision followed all prudent administrative procedures to resolve this matter through administrative channels. All Defendants without exception have concealed, obfuscated, and deceived their role in this miscarriage of justice in the denial of Plaintiff Haddad's Constitutional Civil Rights to include pertinent investigative and administrative records and documents missing from official state files.

30. Plaintiff Haddad has and continues to be the object of ridicule and mockery amongst his peers in the funeral profession as well as by families that otherwise he had served in the past. Plaintiff Haddad's name and reputation as well as his lost business opportunities has and continues to suffer as a result of acts and actions of the Defendants – the concealment, obfuscation, and deception (cover-up) further validating the violation of Plaintiff Haddad's Constitutional Civil Rights.

## SUMMATION

31. It is abundantly clear that Plaintiff Haddad was intentionally, deliberately, falsely, and fraudulently targeted by the conduct of the Defendants and their representatives that not only brought the Massachusetts State Police but a force of no less than seven (7) Boston Police Officers to the building, and who immediately put the facility in a "lock down" mode restraining state government employees and the public from entering the building as they (Boston Police) converged on the dining hall on the 11th floor of the building at 1000 Washington Street in Boston.

32. The Defendants and their representative's conduct, acts, and actions to include concealment, obfuscation and deception after the fact were initiated under the color of law; and such conduct, acts, and actions deprived Plaintiff Haddad of his personal rights, privileges, and immunities secured by the Constitution and laws of the United States.

33. Plaintiff Haddad welcomes the opportunity to provide all supporting documentation to include Massachusetts State Police Incident Reports, 911 audio call to the Boston Police Department, as well as each and every correspondence, document, and conversation etc. to, from, and with Defendants and their representatives referenced herein this complaint dating back to April 12, 2012 during a **Trial by Jury!**

34. Plaintiff Haddad demands judgment against Defendants for $2.9 Million Dollars and such other relief as this Court deems just.

35. **Plaintiff Haddad officially requests / demands of the Court a Trial By Jury!**

**Signature** *[signature]*

**Name**  Philip G. Haddad, Jr. / Pro Se

**Address**  9 Kenwood Avenue
Worcester, MA 01605-1321

**Telephone #**  (508) 852-0094 (residence)
(508) 868-0167 (Cell)